UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TROCA GLOBAL ADVISORS LLC,<br>Interpleader Plaintiff,<br>v.<br>GLOBAL LIQUIDITY SERVICES LLC, d/b/a VENDORPAYMENT, AND BULK MRO INDUSTRIAL SUPPLY, INC.,<br>Interpleader Defendants. | Civil Action No.: 1:23-CV-11546-AK |

**PLAINTIFF TROCA GLOBAL ADVISORS LLC'S MEMORANDUM IN OPPOSITION TO THE UNITED STATES' (DEPARTMENT OF JUSTICE) MOTION FOR LEAVE TO INTERVENE AND FOR A STAY PENDING RESOLUTION OF PARALLEL CRIMINAL PROCEEDINGS**

Plaintiff-Stakeholder Troca Global Advisors LLC ("Troca" or "Plaintiff-Stakeholder"), submits this opposition to the United States' (Department of Justice) Motion for Leave to Intervene and for a Stay Pending Resolution of Parallel Criminal Proceedings ("Motion to Stay"). This case arises from a dispute between the interpleader defendants, Bulk MRO Industrial Supply, Inc. ("Bulk MRO") and Global Liquidity Services LLC d/b/a VendorPayment ("VendorPayment"), regarding assets held in escrow by Troca, Bulk MRO's former law firm. The government has been aware for several months of Troca's efforts to deposit the assets it holds in escrow with a neutral third party so that Bulk MRO and VendorPayment may determine ownership. Troca's interpleader complaint seeks to deposit those funds or assets with the Court until the interpleader defendants resolve their dispute. Days prior to Troca filing its complaint, the government filed its second indictment against Troca's principal, Abhijit Das, which seeks to

criminalize Mr. Das's alleged conduct with respect to those assets. Rather than support Troca's effort to deposit the assets with the Court, the government seeks to stay Troca's interpleader suit based on speculative and conclusory allegations concerning supposed discovery in the interpleader action.

The reasons the government cites in support of its motion are baseless. First, Troca has no intent of taking discovery in the interpleader action so there is no risk of interference by Troca with respect to the government's criminal cases. Regardless, the interpleader case will not reach discovery stage by the time the first criminal trial commences on October 2, 2023. The interpleader defendants are not due to respond to the complaint until October 10, 2023. No discovery requests have been served by any party.

Second, the resolution of this case would not "promote judicial economy." The government has sought to put a stop to any efforts of Mr. Das to safeguard the assets at issue because it does not serve its narrative that Mr. Das committed a crime in his handling of the assets. This is a civil, commercial dispute which has been manipulated by the government – and Bulk MRO – to serve ulterior purposes, principally the prosecution of Mr. Das.

Third, a stay of this case will not save litigation costs but rather, will frustrate the efficient resolution of this dispute. Regardless of what the government contends Mr. Das did with the funds, the fact is that they are the subject of competing claims between Bulk MRO and VendorPayment. Ultimately those funds cannot be distributed until the dispute between the parties is resolved. If this case is stayed while the government prosecutes Mr. Das, it will only delay the disposition of the dispute and substantially increase the prejudice to Troca and Mr. Das. For these reasons, and those discussed below, the government's Motion to Stay should be denied.

## BACKGROUND

***Troca's Representation of Bulk MRO and Bulk MRO's Dispute with VendorPayment***

Troca is a Massachusetts limited liability company offering legal, advisory and escrow services. Interpleader Complaint (ECF No. 1), ¶ 3. Mr. Das serves as Managing Director of Troca and is the sole member of the LLC.

On or about May 13, 2020, Bulk MRO retained Troca for legal and escrow services. Id. ¶ 9. On or about June 17, 2020, without advice from Troca, Bulk MRO executed a Receivables Purchase Agreement and Rider ("Receivables Agreement") with VendorPayment. Id. ¶ 10. Under the Receivables Agreement, VendorPayment financed (a) certain accounts receivables from Bulk MRO's clients and/or (b) the purchase by Bulk MRO of goods for resale to its clients. In both instances, VendorPayment received an interest in the goods and in the assets of Bulk MRO in exchange for the financing arrangements. Id. On February 15, 2021, Federal Resources, an existing client of VendorPayment, issued its first purchase order to Bulk MRO for a $62.4 million order of Hongray vinyl nitrile gloves (the "Purchase Order"). Id. ¶ 11. To facilitate the necessary funding from VendorPayment, on or about March 26, 2021, Bulk MRO, again without consulting or receiving advice from Troca, executed a Notice of Assignment. The Notice of Assignment assigned all of Bulk MRO's outstanding and future invoices to VendorPayment. Id. ¶ 12.

On or about April 14, 2021, Bulk MRO advised VendorPayment of its intention not to finance the Purchase Order through VendorPayment. Id. ¶ 13. Notwithstanding any apparent reliance on financing arrangements provided by VendorPayment, Bulk MRO advised Troca that the financing of the Purchase Order would be handled internally by Bulk MRO and not through VendorPayment. Id. ¶ 14. On or about April 12, 2021, Federal Resource's first payment under

the Purchase Order was received by Bulk MRO. Id.

Bulk MRO expressed concern to Troca that VendorPayment was seeking to coopt or otherwise divert for itself payments from Federal Resources under the Purchase Order. Id. ¶ 15. Accordingly, in early May 2021, Bulk MRO designated its escrow bank account with JP Morgan Chase as the account into which payments from Federal Resources under the Purchase Order would be deposited. Id. On May 10, 2021, Bulk MRO executed the Federal Resources Escrow Agreement ("Escrow Agreement") with Troca under which Troca served as the escrow agent. Pursuant to the Escrow Agreement, Troca is obligated to "hold the Escrow Funds" until it receives authorization from Bulk MRO to disburse the funds to Bulk MRO's payee. Id.

On or about June 2, 2021, VendorPayment asserted its rights under the Receivables Agreement, and issued a Notice of Assignment to Federal Resources, which had been signed by Bulk MRO, seeking to assign the Proceeds from the Purchase Order ("Proceeds") to VendorPayment. Id. ¶ 21. On information and belief, Bulk MRO advised Federal Resources that the Notice of Assignment was fraudulent. As a result, the Proceeds continued to be paid to Bulk MRO's escrow account. Id. at ¶ 22.

On January 24, 2022, counsel to VendorPayment notified Bulk MRO that Bulk MRO was allegedly in default of the parties' Receivables Agreement dated June 17, 2020. VendorPayment terminated the Receivables Agreement and demanded payment of $113,318,082.33 from Bulk MRO. Id. ¶¶ 25, 26. On August 18, 2022 Bulk MRO terminated its engagement of Troca as counsel. Id. ¶ 27. On September 30, 2022, counsel to VendorPayment notified Troca and Bulk MRO of potential claims against Bulk MRO ("September Letter"). Id. ¶ 28.

***The Interpleader Action***

Following notice by VendorPayment of its claims against Bulk MRO, Troca attempted to obtain VendorPayment's and Bulk MRO's consent to deposit the assets at issue with a neutral escrow agent. On October 3, 2022, Troca's counsel advised Bulk MRO's counsel that Troca was willing to immediately transfer $1.5M of funds held in escrow to a destination mutually acceptable to VendorPayment and Bulk MRO. Bulk MRO did not respond to Troca's offer. In April 2023, Mr. Das's counsel again offered BulkMRO's counsel to place the funds and assets with a neutral escrow agent or to file an interpleader and place the funds with the court. Bulk MRO rebuffed this offer. By letter dated May 30, 2023 ("May Letter"), Troca notified Bulk MRO, through undersigned counsel, and VendorPayment that it is in possession, custody or control of certain funds that may be the subject of VendorPayment's September Letter ("Assets"), and requested that Bulk MRO and VendorPayment agree to allow Troca to deposit the Assets with a neutral escrow agent. Id. ¶¶ 31, 32. The May Letter also stated that, failing such agreement, Troca intended to file an interpleader action. Id.

On June 5, 2023, VendorPayment's counsel stated that it had no objection to Troca placing the Assets, referenced in the May Letter, into an escrow account administered by a neutral third-party escrow agent. Id. ¶ 33. As it had done with Troca's earlier attempts, Bulk MRO did not respond the May Letter. Id. ¶ 34. On July 10, 2023, Troca filed this interpleader action. On August 14 and 15, 2023, Troca filed Waiver of Service forms for Bulk MRO and VendorPayment, respectively. Defendants' responses to the Complaint are due on October 10, 2023. No discovery requests have been served. Pursuant to Local Rule 16.1, discovery is not initiated until after a Scheduling Conference, which will be scheduled within 90 days of service, or November 9, 2023.

### *2021 Indictment*

On June 28, 2021, the government filed a sealed indictment against Mr. Das, *USA v. Abhijit Das*, 21CR10200-RGS ("2021 Indictment"). In the 2021 case, the government contends that Mr. Das violated campaign finance laws during his United States Congressional campaign in 2018. Mr. Das asserts that he is not guilty and intends to defend himself at trial on October 2, 2023.

### *2023 Indictment*

Beginning in November 2022, Bulk MRO's principals and identical twin brothers, Devang Shah and Gaurang Shah, spoke with the FBI and implicated Mr. Das in an alleged wire fraud scheme. Motion to Stay, pp. 4-5. The Shah brothers claimed that Mr. Das diverted Bulk MRO's funds, leading to an apparent investigation. See id. As the Shah brothers were well aware, the funds at issue are the subject of conflicting claims. Knowing the government sought to make a criminal case based on the disputed funds, Bulk MRO ignored or refused Troca's attempts to place funds with a neutral third party.

Having received notice of Troca's May 30, 2023 letter from its Bulk MRO witnesses, the United States Attorney's Office was aware of Troca's intent to file an interpleader action. In an apparent attempt to circumvent Troca's interpleader efforts, on June 20, 2023, the United States Attorney's Office filed a sealed indictment in the District of Massachusetts, *USA v. Das*, 1:23-cr-10160-AK ("2023 Indictment"). The indictment, unsealed on June 26, 2023, alleges that Mr. Das misappropriated client funds held in escrow. Mr. Das denies these allegations. The government also filed a motion to revoke Mr. Das's pretrial release on the basis of the allegations in the 2023 Indictment. See 2021 Indictment, ECF No. 76. After a hearing on August 15, 2023, the Court denied the government's motion in part, and imposed the same

conditions that were imposed on July 11, 2023 in the 2023 case. 2021 Indictment, ECF Nos. 104-106.

***Grand Jury Subpoena***

On July 11, 2023, the day following Troca's filing of its interpleader action, the government requested the undersigned counsel accept service of a grand jury subpoena to Troca seeking records to support it 2023 Indictment. The government is well aware that Troca is a single member LLC and that it will be Mr. Das's time and resources that are required to respond to the subpoena. This is a significant disruption for Troca, which merely seeks to deposit the funds and assets at issue with a neutral third party.

**ARGUMENT**

**I. THE COURT SHOULD DENY THE GOVERNMENT'S MOTION TO INTERVENE**

**A. The Government Has Not Met the Requirements for Rule 24(a) Intervention**

The government seeks to intervene pursuant to Fed. R. Civ. P. Rule 24(a)(2) which provides for intervention as of right where the party "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. Rule 24(a)(2). The "interest" that the government alleges to have in the interpleader suit is "to prevent discovery in a civil case from being used to circumvent the more limited scope of discovery in the criminal matter." Motion to Stay, p. 7.

As outlined above, there is no possibility that the interpleader action could reach discovery by the time of the criminal trial on October 2, 2023. Bulk MRO and VendorPayment are not due to respond to the complaint until October 10, 2023. None of the parties have served

discovery requests, and any such requests would be premature under this Court's rules. Moreover, Troca does not intend to take any discovery in the interpleader suit. Its sole objective is to obtain the Court's permission to deposit the assets it holds in escrow for its former client, Bulk MRO, so that the assets are held in a neutral place until such time as Bulk MRO and VendorPayment resolve their dispute. Indeed, this is the very purpose of the interpleader action. Sevelitte v. Guardian Life Ins. Co. of Am., 55 F.4th 71, 80 (1st Cir. 2022) ("The purpose of the interpleader rule is to 'afford[ ] a party who fears being exposed to the vexation of defending multiple claims to a limited fund or property that is under [its] control a procedure to settle the controversy and satisfy [its] obligation in a single proceeding.'") (citing 7 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 1714 (3d ed. 2022 update)).

The government's interest in intervention is focused on the litigation process, which is an inadequate ground to intervene under Rule 24(a). See First Bank Bus. Cap., Inc. v. Agriprocessors, Inc., No. C08-1035, 2009 WL 2584842, at *5 (N.D. Iowa Aug. 18, 2009), aff'd, No. 08-CV-1035-LRR, 2009 WL 2905540 (N.D. Iowa Sept. 4, 2009). In First Bank, the Court found that the government's interest in intervention -- to prevent discovery in the civil action from being used to circumvent the more limited scope of discovery in the criminal matter -- was not recognized by Rule 24(a). Id. The Court found that because the "Government's interest [] is in the litigation process, not in the subject matter of the litigation," it did not fall within Rule 24(a) which only authorizes intervention if the interest "relate[s] to the 'transaction' that is the subject of the action." Id. (citing United States v. Metropolitan St. Louis Sewer Dist., 569 F.3d 829, 840 (8th Cir. 2009) ("A court must carefully analyze whether the proposed intervenor's asserted interest really is bound up with the subject matter of the litigation."). The First Bank Court went on to find that even if the government had an interest in this case which was

recognized by Rule 24(a), whether or not First Bank ultimately prevailed in the disposition of the action would not "impair or impede" the government's discovery concerns. Id. at *5.

Likewise, here, the only interest the government has identified in support of its intervention motion is its interest in preventing discovery from proceeding in the civil case. Even if such interest was recognized under Rule 24(a), which it is not, the government has failed to identify how allowing the civil case to proceed could possibly impair or impede its criminal cases or investigation. The defendants have not yet answered or responded to Troca's interpleader complaint. As no discovery has been served, it is entirely unclear how discovery in the interpleader case "is being used to circumvent the more limited scope of discovery in the criminal matter." Indeed, the 2021 case is scheduled for trial on October 2, 2023 and will be over before discovery is reached in the civil case. Discovery has already commenced in the 2023 case whereas the interpleader action is in its infancy. The government has failed to satisfy Rule 24(a) and is not entitled to intervention as of right.

**B. The Government Has Not Met the Requirements for Rule 24(b) Intervention**

"Under Rule 24(b), a district court may, in its discretion, allow the intervention of any party who 'has a claim or defense that shares with the main action a common question of law or fact.'" T-Mobile Ne. LLC v. Town of Barnstable, 969 F.3d 33, 40 (1st Cir. 2020) (quoting Fed. R. Civ. P. 24(b)(1)(B)). "When deciding whether or not to allow permissive intervention … a district court 'must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.'" Id. (quoting Fed. R. Civ. P. 24(b)(3)). "Additionally, the court may 'consider almost any factor rationally relevant' to the intervention determination." Id. (quoting Daggett v. Comm'n on Governmental Ethics & Election Practices,

172 F.3d 104, 113 (1st Cir. 1999)). "The court 'enjoys very broad discretion in granting or denying [such a] motion.'") Id. (quoting Daggett, supra at 113).

The government's only attempt to establish a common question of law or fact is to argue that the controversies are "identical" because the civil interpleader case alleges the parties have asserted conflicting claims to the assets that the 2023 indictment alleges that Mr. Das stole via wire fraud. Motion to Stay, p. 8. The government misses the point here. The fact that the cases have assets in common does not establish a common question of law or fact sufficient to permit intervention. Troca simply seeks to deposit the assets at issue -- which both interpleader defendants allege belong to them -- to a neutral and safe place. Meanwhile the government seeks for Mr. Das to forfeit those assets. See 2023 Indictment, ¶ 52. The interpleader case will not prejudice the government, but instead protect the very assets that it wants forfeited. Moreover, the interpleader case will ultimately adjudicate ownership of the assets.

While the interpleader case presents little prejudice to the government, the prejudice to Troca is overwhelming. Troca is a single member LLC – its single member being Mr. Das. Troca's sole involvement is that it currently holds the assets at issue in an investment vehicle created for Bulk MRO. The government has subpoenaed Troca for bank records and other documents related to the assets at issue. The government's subpoena forces Mr. Das, as custodian, to go through the arduous process of reviewing and collecting Troca's responsive documents, just weeks before his trial, taking significant time away from Troca's business. Not only is this a substantial interference with Troca's business, but as long as Troca holds those assets, it will continue to be a target of the government's investigation. Troca has sought for nearly one year to deposit the assets with a neutral party or with the court pending resolution of

the civil dispute regarding the assets. Allowing intervention by the government for purpose of staying this case will only substantially delay this litigation and prolong the prejudice to Troca.

Another factor "rationally relevant" to the Court's consideration of the government's motion for permissive intervention is the Department of Justice's overriding purpose to administer justice. See Pugach v. Klein, 193 F. Supp. 630, 634 (S.D.N.Y. 1961) ("Paramount among [the elements prosecutors consider] is a determination that a prosecution will promote the ends of justice, instill respect for the law, and advance the cause of ordered liberty."). In its effort to stay this case, it is doing exactly the opposite. Here, the government is attempting to stay the interpleader case to strengthen its 2023 criminal case against Mr. Das. The government fails to recognize that the interpleader action is nothing more than an effort to request the court's assistance in determining what Troca should do with the assets. If the government is indeed trying to administer justice, it would support Troca's effort to safeguard the assets and to find their rightful owner.

In considering all the relevant factors here, this Court should exercise its very broad discretion and deny the government's motion for permissive intervention.

## II. THE COURT SHOULD DENY THE GOVERNMENT'S MOTION TO STAY

"The decision whether or not to stay civil litigation in deference to parallel criminal proceedings is discretionary." Microfinancial, Inc. v. Premier Holidays Int'l, Inc., 385 F.3d 72, 77 (1st Cir. 2004) (citation omitted). "The 'determination is highly nuanced,' requires balancing 'competing interests[,]' 'and an inquiring court must take a careful look at the idiosyncratic circumstances of the case before it.'" New England Sports Network, L.P. v. Alley Interactive, LLC (CT), No. 22-CV-10024-ADB, 2023 WL 2140474, at *3 (D. Mass. Feb. 21, 2023)

(quoting Microfinancial, Inc., 385 F. 3d at 78). In making this determination, courts consider the following factors:

> (i) the interests of the civil plaintiff in proceeding expeditiously with the civil litigation, including the avoidance of any prejudice to the plaintiff should a delay transpire; (ii) the hardship to the defendant, including the burden placed upon him should the cases go forward in tandem; (iii) the convenience of both the civil and criminal courts; (iv) the interests of third parties; ... (v) the public interest[;] ... (vi) the good faith of the litigants (or the absence of it) and (vii) the status of the cases.

Id. at *3 (quoting Microfinacial, Inc., supra at 78). "Another factor that ... courts consider is the extent to which the issues in the criminal case overlap with those presented in the civil case." Id. (quoting SEC v. TelexFree, Inc., 52 F. Supp. 3d 349, 352 (D. Mass. 2014)). "[A] movant must carry a heavy burden to succeed in such an endeavor." Id. (quoting (quoting Microfinacial, Inc., supra at 77).

In support of its motion, the government argues that a stay is warranted because of overlapping facts and evidence, because a stay will further the public's interest and because Mr. Das will not be prejudiced. As explained below, the government has failed to meet its heavy burden warranting a stay.

**A. The Overlapping Facts Are Minimal and Do Not Require a Stay**

As explained above, the lone similarity between the interpleader case and the 2023 criminal case is the assets at issue. Troca seeks to deposit those assets with this Court and thereafter be discharged from the interpleader case. See e.g., Sun Life Assurance Co. of Canada v. Haroian Irrevocable Ins. Tr. Dated Apr. 29, 1997, No. CV 20-12017-RGS, 2021 WL 3375407, at *1 (D. Mass. Aug. 3, 2021) (discharging plaintiff after payment of policy proceeds to the court); Jackson Nat'l Life Ins. Co. v. Quinones-Gonzalez, No. CV 13-1261 (ADC), 2014 WL 12726401, at *4 (D.P.R. Mar. 31, 2014) (same). Bulk MRO and VendorPayment could then

determine who is entitled to the assets pursuant to their Receivables Agreement and/or Assignment.

**B. A Stay Would Impede Not Further the Public's Interest**

The government argues that the interest of justice weigh in favor of a stay because civil discovery should not be used as a mechanism to circumvent criminal discovery rules. This argument should be rejected for several reasons. First, the government fails to establish any factual basis for its request, but makes general and conclusory allegations that parallel civil proceedings can impede a criminal case. "Conclusory allegations of potential abuse or simply the opportunity for the plaintiff to exploit civil discovery are generally unavailing to support a motion for stay." Digital Equip. Corp. v. Currie Enterprises, 142 F.R.D. 8, 14 (D. Mass. 1991) (citing United States v. All Funds on Deposit, 767 F. Supp. 36, 42 (E.D.N.Y.1991)); U.S. E.E.O.C. v. Glob. Horizons, Inc., No. CV 11-00257 DAE-RLP, 2012 WL 874868, at *4 (D. Haw. Mar. 13, 2012) (conclusory assertions that the criminal case might be jeopardized because civil discovery rules are more broad than criminal discovery rules is not sufficient to warrant stay); SEC v. Fraser, 09-CV-443, 2009 WL 1531854, at *2 (D. Ariz. June 1, 2009).

Here, no discovery requests have been served and therefore there is no basis for the government to speculate as to the potential impact of discovery on the 2023 criminal case. Further, it is impossible for this Court to assess how the criminal case could possibly be impeded by civil discovery when there are no discovery requests to evaluate. See SEC v. Doody, 186 F. Supp. 2d 379, 382 (S.D.N.Y. 2002) (rejecting government's motion for complete stay of discovery pending trial of a parallel criminal case for insider trading where court was "left guessing as to just what protection the government legitimately requires").

The fact that a related civil proceeding is pending at the same time as a criminal case does not automatically entitle the government to a stay. In United States Sec. & Exch. Comm'n v. Kanodia, 153 F. Supp. 3d 478, 481 (D. Mass. 2015), the Court rejected the argument that the defendant "could use the civil discovery process to obtain information that could help him in his criminal case and to which he otherwise would not be entitled at this stage of the criminal proceeding." The Court found that:

> Although it is true that civil discovery might reveal aspects of the government's criminal case, or potentially result in inconsistent witness statements if witnesses are questioned more than once, exposing the government's case or testing witness recollections will not fundamentally compromise an ongoing investigation or prosecution.

Kanodia, 153 F. Supp. 3d at 482; see also S.E.C. v. O'Neill, 98 F. Supp. 3d 219, 222 (D. Mass. 2015) (same).

Likewise, in New England Sports Network, L.P., 2023 WL 2140474, at *3–4, the Court denied the government's motion to stay. There, the only specific concern the government raised was the "potential depositions of the government's witnesses in advance of trial [c]ould create additional Jencks material, separate and apart from the material that already exists." Id. at *3. The Court found that that this alone was "insufficient to meet the heavy burden for showing the need for a discretionary stay", id., explaining as follows:

> While the Court recognizes that the government did not choose to bring this civil action, it does not change the fact that there is no statute or rule of discovery that entitles the government "to insulate its witnesses from discovery or questioning in anticipation of a criminal trial." . . . "[E]vidence supporting an indicted criminal case ought to be able to survive scrutiny, and the government should not be so invested in withholding information until disclosure is required—after all, the goal is a just resolution in both the civil and criminal cases, and there is no doubt that confidence in an outcome is highest where the evidence is known and can be tested."

Id. at *4 (D. Mass. Feb. 21, 2023)(quoting Kanodia, 153 F. Supp. 3d at 481; O'Neill, 98 F. Supp. 3d at 224).

The government is focused only on the public interest which serves its cause, but "[t]he public has an interest in both the prompt resolution of civil cases as well as the fair prosecution of criminal cases." Digital Equipment Corp., 142 F.R.D. at 14 (citation omitted). The public interest is best served by allowing the interpleader suit to proceed.

**C. A Stay Would Result in Substantial Prejudice to Troca and Mr. Das**

The government argues that a stay would not prejudice the defendant because it would "allow the defendant and court system to avoid substantial costs while the criminal case proceeds." Motion, p. 14. This argument is nonsensical. Prejudice does not cease to flow because Mr. Das would not have to spend litigation costs on a civil matter that he initiated on behalf of Troca. Moreover, this notion has been rejected by another court within the District:

> The role of the Court is to ensure that once a party brings a criminal or a civil case, the case is administered impartially and efficiently to ensure a fair outcome. The idea of the federal government asking for the SEC's case to be stayed to save the defendants money is troubling—particularly where the government's request could have the ancillary effect of giving the government a strategic advantage in its own case.

O'Neill, 98 F. Supp. 3d at 223 (denying DOJ's motion to stay stating "[t]he Court will look very critically at any effort that appears designed to give the government an unwarranted tactical advantage or to otherwise have a trial by ambush in its criminal case against [the defendant].")

As described above, there is substantial prejudice to Mr. Das and Troca if Troca is prevented from pursuing its interpleader case and depositing the funds at issue with this Court. The government and its key witnesses, Bulk MRO's principals, seek to use Troca's continued possession of the escrow assets against Mr. Das in the criminal case. A stay would be

detrimental to Mr. Das's defense and would further the government's narrative that Mr. Das engaged in fraud. The government should not be permitted such a tactical advantage to the prejudice of Mr. Das and Troca.

**CONCLUSION**

For the foregoing reasons, the United States' (Department of Justice) Motion for Leave to Intervene and for a Stay Pending Resolution of Parallel Criminal Proceedings should be denied.

**TROCA GLOBAL ADVISORS LLC**

Respectfully submitted,

*<u>/s/ Alan D. Rose Jr.</u>*

Alan D. Rose, Jr. (BBO #628871)
Meredith W. Doty (BBO #652220)
ROSE LAW PARTNERS LLP
One Beacon Street, 23rd Floor
Boston, MA 02108
(617) 536-0040
Fax: (617) 536-4400
adrjr@rose-law.net
mwd@rose-law.net

Dated: August 16, 2023

## CERTIFICATE OF SERVICE

I, Alan D. Rose, Jr. hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent via mail to those indicated as non-registered participants on August 16, 2023.

*/s/ Alan D. Rose, Jr.*
Alan D. Rose, Jr.